UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CELIA WILLIAMS and BRIGITTE COX, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ) <br> ROBERT A. McDONALD as Secretary of ) <br> the Department of Veterans Affairs, ) <br> ) <br> Defendant. ) | Civil No. 3:15-CV-1108 <br> Judge Aleta A. Trauger |

**MEMORANDUM**

Defendant Robert A. McDonald has filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment (Docket No. 8), to which plaintiffs Celia Williams ("Williams") and Brigitte Cox ("Cox") have filed a Response (Docket No. 14), and the defendant has filed a Reply (Docket No. 19). For the following reasons, the motion will be granted in part and denied in part.

**I.    Background**

    **A.    Complaint Allegations**

The court focuses on the well-pleaded allegations in the Complaint. Williams is a resident of Sumner County, Tennessee. Cox is a resident of Rutherford County, Tennessee. Defendant McDonald (the "VA") is Secretary of the United States Department of Veterans Affairs, sued in his official capacity as responsible for the compliance by his department's employees with relevant law.

Williams and Cox, both African-Americans, are employed as Medical Billing Reimbursement Specialists by the Department of Veterans' Affairs at the Mid-South

1

Consolidated Patient Account Center. On April 15, 2015, the plaintiffs were working when they began to receive a chain of emails in which their co-worker, Wendy Jeans, referenced people from New Orleans and stated, "The less I have to deal with those 'NOLA' freaks the better I feel!!!1" [sic]. In response to that comment, another co-worker, Misty L. Lingle, stated "In Mississippi, they call those folks coon asses Wendy," [sic]. In response to these emails, Cox responded separately with, "WTH??" and "That comment can be taken waaaaaaaaaaaaaaaaaaaay out of context. I've only been back in the South for a short time." Another co-worker of the plaintiffs, Jason D. Dennis, entered the chain by stating, "I prefer to talk slang about Asians. Now that's funny. Sorry not sorry Mo. Lol I love you." As pleaded, Mr. Dennis also has a history of emailing material that is discriminatory and harassing of homosexuals.

At that point, the Specialty Billing Supervisor, Jerry Plaisance, stated, "maybe we should all just go back to billing." Jason L. Tate, another co-worker stated "I am offended." Plaisance then issued a "history lesson" explaining the origin of the term "coon ass," but did not make any further effort to end the inappropriate exchange or apologize to those who were offended by it. At that point, Williams advised Plaisance, as well as the others involved, that the term "coon" has also been used as an extremely disparaging and derogatory term for African-Americans by citing dictionary.com.

On April 23, 2015, after Plaisance took no action to correct the situation, Cox reported the incident to the Department of Veterans' Affairs Office of Resolution Management. That same day, Williams was cautioned by her supervisor about disturbing her co-workers, although she had done nothing to cause a disturbance. In fact, Plaisance attempted to counsel Williams regarding racially vulgar words and, in the course of doing so, used those words in a racially vulgar

manner. On May 22, 2015, the informal counseling which had been generated as a result of the plaintiffs' complaints was closed without any adverse action having been taken against Plaisance or anyone else. Prior to her complaint about the racially charged email, Williams had received no discipline and had received very high marks on her performance reviews for the year.

### B. The Plaintiffs' Claims

The plaintiffs bring a claim for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), *as amended* 42 U.S.C. § 2000, which prohibits discrimination based upon race.[1] More specifically, the plaintiffs allege two violations of Title VII; first, that the plaintiffs were discriminated against as the result of an adverse employment action in the form of an official reprimand for causing a disturbance, and, second, that the plaintiffs suffered a hostile work environment due to being subjected to racially vulgar material and the VA's failure to address the resulting racially hostile conditions toward African-Americans.

## II. Rule 12(b)(6) Standard

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ.

---

[1] The plaintiffs also brought a claim under the Tennessee Human Rights Act, but they have abandoned it in response to the pending motion. The plaintiffs have also abandoned their claim for punitive damages. The court, therefore, need not discuss these claims further.

P. 8). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

A complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 556).

### III. <u>Analysis</u>

The VA's brief is not a model of clarity. From the outset, it confuses the standards employed at the motion to dismiss and summary judgment stages. The VA argues that the Complaint should be dismissed because the plaintiffs do not sufficiently plead every element of the *prima facie* case of a hostile work environment. Specifically, the VA contends that the plaintiffs do not establish in the Complaint that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. (Docket No. 9, pp. 3-4.) However, it is clear from governing caselaw that it is inappropriate to demand that the plaintiffs meet the high burden of pleading the *prima facie* case they would have to establish in a *McDonnell Douglas* summary judgment analysis at this early

4

stage of the case. As the Sixth Circuit has explained:

> The . . . requirement that [a] complaint establish a *prima facie* case . . . is contrary to Supreme Court and Sixth Circuit precedent. In *Swierkiewicz v. Sorema*, the Supreme Court unanimously held that the *prima facie* case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement. 534 U.S. 506, 510 (2002). As the Court reasoned, "it is not appropriate to require a plaintiff to plead facts establishing a *prima facie* case because the *McDonnell Douglas* framework does not apply in every employment discrimination case." *Id*. at 511. The court explained that the precise requirements of a *prima facie* case can vary depending on the context and before discovery has unearthed the relevant facts and evidence, it may be difficult to define the appropriate formulation. *Id*. at 512. Significantly, the Supreme Court identified the possibility that discovery may produce direct evidence of discrimination, rendering the *McDonnell Douglas* burden-shifting framework inapplicable to a plaintiff's claims. *Id*. at 511-12. The Supreme Court concluded that the ordinary rules of notice pleading apply and upheld the complaint because it gave "fair notice" of the basis of the plaintiff's claims. *Id*. at 514.
>
> The Supreme Court's subsequent decisions in *Twombly* and *Iqbal* did not alter its holding in *Swierkiewicz*. *Twombly* distinguished *Swierkiewicz*, explaining that the prior case "did not change the law of pleading," but simply reemphasized that application of the *McDonnell Douglas prima facie* case at the pleading stage "was contrary to the Federal Rules' structure of liberal pleading requirements." *Twombly*, 550 U.S. at 570 (explaining that a plaintiff need not allege "'specific facts' beyond those necessary to state [her] claim and the grounds showing entitlement to relief").

*Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). Since *Twombly* and *Iqbal*, the Sixth Circuit has also recognized the continuing viability of *Swierkiewicz's* holding. *See, e.g., Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (holding that the *McDonnell Douglas prima facie* case is not a pleading requirement and that "the ordinary rules for assessing the sufficiency of a complaint apply"); *Back v. Hall*, 537 F.3d 552, 558 (6th Cir. 2008) (same). Again, in *HDC, LLC v. City of Ann Arbor*, the Sixth Circuit recognized the applicability of *Swierkiewicz's* holding and further noted that it would be "inaccurate to read [*Twombly* and *Iqbal*] so narrowly as to be the death of notice pleading and we recognize the

5

continuing viability of the 'short and plain' language of Federal Rule of Civil Procedure 8." 675 F.3d 608, 614 (6th Cir. 2012). Accordingly, the Sixth Circuit has expressly found it to be error for a district court to require a plaintiff to plead a *prima facie* case under *McDonnell Douglas* in order to survive a motion to dismiss. *Keys*, 684 F.3d at 609. Yet that is precisely what the VA seeks.

The Supreme Court established a "plausibility" standard in *Twombly* and *Iqbal* for assessing whether a complaint's factual allegations support its legal conclusions, and that standard applies to discrimination claims. *Keys*, 684 F.3d at 610. Thus, although the Complaint need not present "detailed factual allegations," it must allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could "draw the reasonable inference," *Iqbal*, 556 U.S. at 678, 679, that the VA either discriminated against the plaintiffs with respect to an adverse employment event or a hostile work environment. *Keys*, 684 F.3d at 610. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

While a close question, the court finds that the plaintiffs' Complaint contains more than the "'naked assertion[s]' devoid of 'further factual enhancement'" that *Twombly* and *Iqbal* prohibit. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). As to the racial discrimination claim, the elements are (1) that a plaintiff is a member of a protected class; (2) she has suffered an adverse employment action; (3) she was performing her job satisfactorily; and (4) similarly-situated employees who are not members of the protected class were treated more favorably. The Complaint alleges that, after Cox made a formal complaint, Williams, an African-

6

American, was formally cautioned by her supervisor about disturbing her co-workers, although she had done nothing to cause a disturbance. This formal warning was issued even though, according to the Complaint, Williams was a model employee satisfactorily performing her job and had done nothing to deserve it other than expressing offense at the racially charged environment caused by the email chain. Moreover, the VA's "investigation" was closed without any other steps being taken to address or remedy the situation, or to redress the discipline that had been issued to Williams. The court finds that, as to Williams, the Complaint states plausible content that allows the court to draw the necessary inference to find a viable claim and to conclude that the Complaint puts the VA on sufficient factual and legal notice of that discrimination claim to survive the Motion to Dismiss. However, because there was no adverse employment action against Cox, the court finds that her Title VII racial discrimination claim cannot be sustained on this pleading.

As to the hostile work environment claim, the plaintiffs must plead conduct that was sufficiently severe or pervasive to create an environment that a reasonable person would find hostile or abusive, and that the plaintiffs regarded it as such. *Harris v. Forklift Sys, Inc.*, 510 U.S. 17, 21 (1993). The "mere utterance of an . . . epithet which engenders offensive feelings in a employee" does not sufficiently affect the conditions of employment to implicate Title VII. *Id*. Rather, Title VII comes into play when there is a "discriminatorily abusive work environment" that can detract from employees' job performance or keep them from advancing in their careers. *Id*. (citations omitted). The Supreme Court has held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788

(1988).

Plaintiffs have pleaded that Cox immediately took action to advise her co-workers that she believed that the email chain in question, which used the term "coon asses," was inappropriate for the workplace. Despite the fact that she took such action, the only response came from another co-worker who stated that he preferred to discriminate against Asians. According to the Complaint, Mr. Dennis, the co-worker who preferred to target Asians, has a history of making inappropriate and vulgar comments about homosexuals to his co-workers via his work email. Instead of confirming that this line of discussion was inappropriate or that such language did not belong in the workplace, the plaintiffs' supervisor, Mr. Plaisance ignored the situation by stating only, "maybe we should all just go back to billing." When a third co-worker, Mr. Tate, stated that he was offended, Mr. Plaisance's response was to issue what he referred to as a "history lesson," wherein he explained that the term "coon ass" is generally used as vulgar slang against Cajuns. At that point, Plaintiff Williams felt it necessary to advise her co-workers that the term "coon" is used derogatorily towards African-Americans. The Complaint goes on to reference the fact that the hostile environment created by this racially charged email exchange continued through the "disciplining" of Williams for causing a "disturbance" and the closing of the VA's investigation without any corrective action against Mr. Plaisance or anyone involved in the email chain, strongly suggesting that the question of the hostility in the workplace has not been resolved at all. While admittedly thin on detail, the court finds that the plaintiffs have pleaded enough factual content to allow the court to draw the necessary inferences regarding the plaintiffs' claim of a hostile work environment. The plaintiffs have adequately pleaded that the email chain and the VA's follow-up response to it created a hostile work environment that

negatively impacted their reputation at work and ability to do their jobs and caused them personal consternation. The VA is on notice of the plaintiffs' hostile work environment claim and can defend against it appropriately in dispositive motion practice.[2]

## CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Docket No. 8) will be granted in part and denied in part. The motion will be granted as to the plaintiffs' THRA claims, claims for punitive damages, and the Title VII racial discrimination claim concerning Cox. The motion will be denied as to the Title VII racial discrimination claim concerning Williams and the Title VII hostile work environment claim concerning both Cox and Williams.

An appropriate Order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[2] The VA raises a request, in the alternative, for summary judgment. This is based primarily on the evidentiary argument that the term "coon asses" has historically tended to be used to refer not to African-American people, but rather to Cajun people, and, as such, this term is not offensive to the plaintiffs and cannot form a basis for the plaintiffs' claim. The plaintiffs dispute this factual assertion (*see* Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts (Docket No. 15, ¶¶ 1-2)), making summary judgment inappropriate on this basis alone. But summary judgment is also inappropriate because it is premature. The current record as to the meaning of "coon asses" consists solely of dueling interpretations of citations to dictionary.com. Because this case has not even advanced to the discovery phase, the plaintiffs have not had the opportunity, for example, to depose the individual who utilized the term to discover the intended meaning. The plaintiffs should have an opportunity to develop the record prior to summary judgment.